# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER SHOOKLA | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 18-481 |
| NANCY A. BERRYHILL[1], | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM AND OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                                 January 29, 2019

Christopher Shookla, ("Plaintiff") filed this action to review the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1385 ("the Act").[2] This matter is before me for disposition, upon consent of the parties.[3] For the

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted as the defendant in this case.

[2] The DIB program provides for payment of disability benefits to individuals who are "insured" by virtue of their contributions to the Social Security trust fund through tax on their earnings. 20 C.F.R. §§ 404.110, 404.315. A claimant who first satisfies the medical requirements for disability **after** his date last insured will **not** be entitled to DIB benefits. 20 C.F.R. § 404.131(a). Plaintiff is required to prove that he became disabled on or before June 30, 2015, the date his insured status expired.

      Agency regulations preclude the receipt of SSI benefits for any month prior to filing an application. 20 C.F.R. § 416.335. Accordingly, the relevant date for determining Plaintiff's eligibility for SSI is December 31, 2015, the date when he filed his claim for SSI.

[3] In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment. (Consent and Order, ECF Nos. 14 and 15).

reasons that follow, Plaintiff's request for review will be DENIED.

**I.       PROCEDURAL HISTORY**

Plaintiff protectively filed for DIB on December 4, 2014, and SSI on December 31, 2015. (R. 71, 157-58). He alleged disability as of February 19, 2011, due in relevant part to diabetes, glaucoma, pulmonary artery disease and bipolar disorder. (R. 71). The Social Security Administration denied his claim for benefits at the initial level of review. (R. 71-84). Following the denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on March 8, 2017. (R. 39-70). Plaintiff, represented by an attorney, appeared and testified. *Id*. An impartial vocational expert ("VE") also testified at the hearing. (R. 63-69). On June 7, 2017, the ALJ issued a decision denying benefits under the Act. (R. 17-28). The Appeals Council denied Plaintiff's request for review, (R. 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff commenced this action on February 5, 2018, and subsequently filed a Brief and Statement of Issues in Support of Request for Review. (ECF No. 10). Defendant filed a response. (ECF No. 13).

**II.      LEGAL STANDARD**

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c (a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, then the

> Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520, 416.920. The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, the claimant is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled so long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III. FACTUAL BACKGROUND[4]

The Court has reviewed the administrative record in its entirety, and summarizes here the evidence relevant to the instant request for review.

Plaintiff was forty-four years old on his alleged disability onset date. (R. 51). Plaintiff completed high school and attended one semester of college. (R. 44-45). He previously worked as an actor, storyteller, and game technician. (R. 45-46). At the time of the administrative hearing, Plaintiff lived in Philadelphia, Pennsylvania with his nephew. (R. 43).

### A. Medical Evidence

In May 2014, Plaintiff was admitted to Aria Health after an apparent suicide attempt by overdosing on Tylenol. (R. 339-344). He reported feeling "okay" and that the Tylenol overdose was precipitated by an argument with his wife. (R. 343). Plaintiff was transferred to the Belmont Center for Psychiatric Treatment. (R. 370). Treatment notes from Dr. Sachin Mehta, attending psychiatrist, indicated that Plaintiff's behavior was "extremely theatrical." *Id*. Plaintiff reported that the argument with his wife escalated to talk of divorce and a restraining order. *Id*. Plaintiff's wife left, taking their ten-year old son with her. *Id*. Plaintiff, feeling abandoned and angry, set up a video camera to videotape himself singing a song and taking the Tylenol. *Id*. Plaintiff ran out of tape before he could complete the attempt. (R. 371). Plaintiff was diagnosed with bipolar disorder and prescribed Depakote. (R. 372). Plaintiff was

---

[4] Plaintiff's request for review challenges the ALJ's consideration of his mental impairments. Accordingly, the Court's recitation of the evidence focuses on those impairments.

discharged from Belmont as he was doing well, with good mood, euthymic affect,[5] goal-directed thought processes, and fair judgment and insight. *Id*.

Plaintiff began treatment at Best Behavioral Healthcare in December 2014. Treatment notes from December 16, 2014, indicated Plaintiff's chief complaint was that "he and his wife divorced after nearly 30 years of marriage and that he is feeling depressed and having difficulty dealing with his current situation." (R. 913). Dr. Altaf Kasmani noted on April 13, 2015, that Plaintiff had not been seen at Best due to heart surgery, and that his medications had run out in January. (R. 897). Dr. Kasmani renewed Plaintiff's prescriptions for Depakote and Risperadol, and also prescribed Lexapro. *Id.* Dr. Kasmani noted that Plaintiff reported doing "okay when he was taking medication, sleeping well, trying to control his anger, working with his ex-wife to try to get his life together." *Id*. Dr. Kasmani found Plaintiff to be calm and pleasant, with logical and circumstantial thought processes, fair insight and judgment, no suicidal or paranoid thought processes, with an unhappy and inappropriate affect. (R. 898).

A treatment note from April 21, 2015 reported "a great deal of progress" and that "daily life and life in general was much happier." (R. 896). James Stowe, MA reported Plaintiff had made progress and shown the ability to take concepts learned and discussed in therapy sessions and apply them to everyday life. (*Id*.). A treatment note from May 22, 2015, reported Plaintiff was motivated with a good response to therapy, but was depressed over a protection from abuse order entered against him. (R. 894). Progress notes from June 22, 2015, indicated Plaintiff still suffered from depression due to his divorce. (R. 892). Treatment notes from September 28, 2015, noted Plaintiff was very angry because the Welfare Department cut his benefits. (R. 887).

---

[5] A euthymic mood refers to a normal, tranquil mental state. In an individual affected with bipolar disorder, euthymia is a stable mental state or mood that is neither manic nor depressive. https://www.merriam-webster.com/medical/euthymia (last visited January 29, 2019).

A progress note from October 13, 2015, reported Plaintiff was feeling desperate due to lack of money and a support system. (R. 886). Plaintiff reported applying for SSI. (*Id*.). Progress notes from October 19, 2015, show Plaintiff in an angry mood and reporting "The only thing I want is [to] obtain my SSI." (R. 885). On November 16, 2015, Plaintiff reported he was anxious over his financial situation because his "ex-wife decided to sell the house and he has no idea where he will live." (R. 880). Notes from November 23, 2015, indicated Plaintiff continued to be angry about his finances and the fact that his lawyer will not call him back about his SSI. (R. 879). Plaintiff stated to therapist, "If I don't get SSI, I will not have a place to live." *Id.*

Progress notes from January 26, 2016, show Plaintiff continuing a good relationship with his ex-wife so that he can continue to live with her. (R. 875). He reported avoiding arguments with her because he has nowhere else to live. *Id.* At a March 9, 2016, therapy session, Plaintiff reported he continued to be upset over his divorce, and his ex-wife wanted him out of the house. (R. 868). Notes from April 19, 2016 indicated Plaintiff feeling fine and calm at home; he reported that he missed his last therapy session as he was helping his son with the PSSA test. (R. 851). The April 26, 2016 progress notes indicated Plaintiff continued to do well and was transferred to another therapist with more experience in marital conflicts. (R. 849).

Plaintiff began treating with Edgar Hernandez, MHP on May 17, 2016. Hernandez reported Plaintiff having difficulty dealing with his ex-wife who he is dependent upon, as he doesn't have a source of income. (R. 845). Plaintiff reported being unable to work because he has been unable to hold a job longer than a few months. (*Id*.). Hernandez found Plaintiff pleasant and cooperative, with normal speech and a belligerent attitude. (*Id*.). In a follow up session on May 24, 2016, Hernandez stated, "When [Plaintiff comes in] for therapeutic sessions he has very little to talk about except his feeling bitter toward his wife, for not being faithful to

6

him and by playing him via Facebook. He wishes he didn't have to live with her, but financially he has no other means than her financial support." (R. 843). On June 7, 2016, Hernandez reported that Plaintiff continued to feel bitter and angry due to his divorce and lack of money. (R. 841). Progress notes from July 5, 2016, record that Plaintiff continued to complain about his ex-wife. Hernandez articulated Plaintiff's treatment plan with a goal to, "improve his attitude, control his anger and control his negative attitude." (R. 836, 841). In a progress note from July 26, 2016, Hernandez stated that Plaintiff continued to instruct his son who attended cyber school. (R. 831). Hernandez reported, "the intervention of this session was to empower the individual to make an attempt to change for the first time in his life, by attempting to get along with the people around him." *Id*.

At an August 30, 2016 session, Hernandez stated, "the intervention [of] the session was to provide individual with inspiration as to why he behaves the way he does, he [is] very angry and resentful toward everybody around him. The individual will work on forgiving his wife and accepting his problems relating to the lack of thankfulness when talking to people, and he will work on improving his social skills." (R. 824-5). Hernandez' records from September 1, 2016, indicated that Plaintiff moved in with his nephew and is feeling "not too bad." (R. 821). A progress note dated November 7, 2016, indicated that Plaintiff continued to live with his nephew, but they did not have any heat or electricity. (R. 816). Hernandez reported that Plaintiff "refuses to follow any recommendations made to him" and that he presents with "negative attitudes, resentful and angry." (*Id*.).

On September 14, 2014, Hernandez completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (R. 618-620). According to Hernandez, Plaintiff displayed "difficulty concentrating" and "low frustration tolerance." (R. 618). He opined that

Plaintiff had moderate limitations in his ability to understand, remember and carry out simple instructions; and marked limitations in his ability to understand, remember and carry out detailed instructions, and make judgments on simple work-related decisions. He found Plaintiff had extreme limitations in his ability to interact appropriately with the public, and to respond appropriately to changes in a routine work setting; and had marked limitations in his ability to interact appropriately with supervisors and co-workers, and to respond appropriately to work pressures and changes. (R. 619). Hernandez noted that Plaintiff "has the tendency to become very defensive when he feels challenged by others." (*Id*.). He continued, "he has had conflicts on 90% of the sessions he has attended therapy; he screams back and curses when he is questioned about his capacity to function." (*Id.*).

On April 23, 2015, psychologist, Joseph Primavera, Ph.D, completed a consultative examination of Plaintiff and completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (R. 611-617). Dr. Primavera opined that Plaintiff had moderate limitations in his ability to understand, remember and carry out simple instructions, and in his ability to make judgments on simple work-related decisions; and marked limitations in his ability to understand, remember and carry out detailed instructions, and in his ability to make judgments on complex work-related decisions. (R. 615). He found Plaintiff had marked limitations in his ability to interact appropriately with the public, and to respond appropriately to changes in a routine work setting; and moderate limitations in his ability to interact appropriately with supervisors and co-workers, and respond appropriately to work situations and changes in a routine work setting. (R. 616).

On May 4, 2015, Paul Perch, Ed.D completed a RFC Assessment (Mental). (R. 80-82). Dr. Perch opined that Plaintiff had no significant limitations in his ability to understand,

remember and carry out simple instructions, or in his ability to make judgments on simple work-related decisions; and marked limitations in his ability to understand, remember, and carry out detailed instructions. (R. 81). He found Plaintiff had no significant limitations in his ability to interact appropriately with the public; moderate limitations in his ability to respond appropriately to changes in a routine work setting; moderate limitations in his ability to interact appropriately with supervisors; no significant limitations in his ability to interact with co-workers; and moderate limitations in dealing with changes in a routine work setting. (R. 82).

B.  **Lay Evidence**

At the administrative hearing, Plaintiff testified that he last worked at Dave and Buster's as a game technician. (R. 45). He testified that he is unable to work due to intermittent claudication in his leg and that his "medication for bi-polar disorder kind of messes with [his] concentration." (R. 46).

IV.  **ALJ'S DECISION**

Using the five-step inquiry described above, the ALJ determined that Plaintiff was not disabled. (R. 17-28).

1.  At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity after his alleged onset of disability. (R. 19).

2.  At step two, the ALJ found that Plaintiff suffers from the following severe impairments: coronary artery disease, peripheral vascular disease, ischemic cardiomyopathy, congestive heart failure, residuals of amputation of the bilateral great toes, diabetes mellitus, major depressive disorder, and bipolar disorder with psychotic features. (R. 19).

3.  At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1. (R. 20).

4. At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work with the following limitations: can stand and/or walk in any combination up to four hours in an eight hour workday using a single point cane to ambulate; no more than occasional postural activities except no climbing of ladders, ropes, or scaffolds, and no balancing on uneven or moving surfaces; must avoid concentrated exposure to extreme temperatures, humidity, vibration, fumes/odors/dust/gases, and hazards; can understand and remember simple 1-2 step instructions to carry out routine and repetitive tasks; no rapid production rate work; no exposure to the general public; no more than occasional exposure to co-workers or supervisors; no tandem or team work with co-workers on the same task; and, working in occupations where there are few and infrequent changes in the work setting or the tasks performed. (R. 21).

5. At step four, the ALJ found Plaintiff unable to perform any past relevant work. (R. 26).

6. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that in significant numbers in the national economy that Plaintiff can perform. (R. 27).

Accordingly, the ALJ found Plaintiff was not disabled. (R. 28).

## V. DISCUSSION

In his request for review, Plaintiff argues that the ALJ's RFC finding is directly contradicted by the opinions of the examining experts, and the ALJ did not give a legally sufficient reason to reject those opinions.[6] The Commissioner counters that the ALJ properly analyzed the medical opinion evidence, and that substantial evidence supports the ALJ's decision. Having reviewed the parties' submissions, the record -- including the medical evidence and the hearing testimony -- and the ALJ's decision, this Court concludes that remand is not

---

[6] Plaintiff briefly notes that since Plaintiff has non-exertional limitations, the Medical-Vocational Rules should not be used and testimony from a vocational expert should be elicited. (Pl. Br. at 10). However, the ALJ **did** utilize vocational expert testimony to determine whether work existed in significant numbers in the national economy that Plaintiff could perform, given his specific physical and nonexertional limitations. (R. 63-70). Accordingly, the ALJ committed no error.

warranted based on the ALJ's consideration of medical opinions regarding Plaintiff's mental limitations.

The ALJ has a duty to evaluate all relevant evidence in the record. *Burnett,* 220 F.3d at 121. To facilitate meaningful judicial review, the ALJ must explain clearly and fully the basis of her decision. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The ALJ must discuss what evidence supports her determination, what evidence she rejected, and her reasons for accepting some evidence while rejecting other evidence. *Diaz v. Comm'r of Soc. Sec.,* 577 F.3d 500, 505–06 (3d Cir. 2009); *Cotter,* 642 F.2d at 705–06. Otherwise, the reviewing court cannot determine whether significant probative evidence was improperly rejected or ignored. *Burnett,* 220 F.3d at 121; *Cotter,* 642 F.2d at 706–07.

The ALJ may give more or less weight to a treating physician's opinion based on: (1) the length of the treatment relationship and frequency of examination; (2) nature and extent of examination; (3) the supporting explanations provided for the opinion; (4) the consistency of the opinion with the records as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). In rejecting or giving less weight to a treating physician's opinion, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir, 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). Social Security Regulations recognize that treating physicians have a unique perspective that "cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

A treating source opinion is not entitled to controlling weight if unsupported by medically acceptable clinical and diagnostic techniques, or if inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011); *Plummer*, 186 F.3d at 429. If a treating source's opinion is not entitled to controlling weight, the ALJ determines how much weight it is to be afforded based on factors such as the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, and the physician's specialization. 20 C.F.R § 404.1527(c)(2)-(6), *see Colvin v. Comm'r Soc. Sec.*, No. 16-2213, 2017, WL 203372, at *2 (3d Cir. Jan. 18, 2017) (citations omitted).

Treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, but state agency opinions merit significant consideration as well. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The ALJ is permitted to give great weight to a non-treating, non-examining expert opinion if it is well-supported by the medical evidence of record. *See Sassone v. Commr of Soc. Sec.*, 165 F. App'x 954, 961 (3d Cir. 2006) (not precedential).

### A. RFC Assessment

Plaintiff challenges the ALJ's Step Four determination, arguing that the ALJ did not reasonably support her assessment of Plaintiff's RFC with satisfactory evidence. The Commissioner asserts that the ALJ properly evaluated Plaintiff's RFC, and substantial evidence supports the ALJ's RFC assessment limiting Plaintiff to a reduced range of light work.

Residual Functional Capacity ("RFC") is defined as the most an individual can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ's finding of RFC must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter,* 642

F.2d at 704-05 (explaining reasons why an administrative decision should be accompanied by clear and satisfactory explanation). In making an RFC determination, the ALJ has a duty to evaluate all relevant record evidence. *Fargnoli,* 247 F.3d at 41; *Burnett,* 220 F.3d at 121. That evidence includes medical opinions from "physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a [claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what a [claimant] can still do despite impairment(s), and . . . physical or mental restrictions." 20 C.F. R. §416.927(a)(1).[7] Third Circuit law unequivocally states that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and [residual functional capacity] determinations." *Chandler*, 667 F.3d at 361 (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).

The ALJ found that Plaintiff has the residual functional capacity to perform light work with some limitations. Substantial evidence supports the ALJ's RFC assessment. The ALJ relied on the treatment record, medical opinions, and Plaintiff's testimony in determining Plaintiff's RFC. The ALJ considered the record and determined that Plaintiff is "limited to unskilled work due to his deficiencies in understanding, memory, concentration, persistence, and pace, and further restrictions have been added due to his significant social functioning and adaptation deficiencies." (R. 26). After the ALJ completed her analysis of the medical records, she explained why the medical evidence supports the RFC assessment. *Id.* Specifically, the ALJ referred to treatment notes which indicate Plaintiff's mental status examinations have been generally satisfactory. (R.26, 811-846). The ALJ also noted that Plaintiff's inpatient

---

[7] The Social Security Administration revised its medical evidence rules on January 18, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819 (F.R.) (Jan. 18, 2017). The revised final rules took effect on March 27, 2017, and do not impact the outcome of this Report and Recommendation.

13

hospitalization was "proximate to the very significant external stressor of his separation and divorce." (R. 26, 370-371). The ALJ further noted that Plaintiff's treatment notes focus on his relationship with his ex-wife and his bitterness over their divorce. (R. 26, 811-846). The ALJ gave great weight to state agency medical consultant, Dr. Joseph Primavera in assessing Plaintiff's RFC. (R. 25). The ALJ reviewed Dr. Primavera's disability determination explanation and considered Dr. Primavera's determinations in the ultimate RFC assessment. The ALJ properly relied on Dr. Primavera's assessment in determining Plaintiff's RFC because it was consistent with the medical record.

The ALJ also relied upon Plaintiff's activities of daily living in determining Plaintiff's RFC, finding that his activities of daily living suggest his symptoms do not rise to a disabling level of impairment. (R. 21). The ALJ noted that Plaintiff can tend to his own needs, cook, clean, care for his teenage son, and manage his own money. (R. 21). Additionally, Plaintiff testified he can do laundry, figure out transportation schedules and take public transportation. (R. 55, 57). He also testified that he hasn't had any problems with his temper since his last job at Dave and Buster's, and his medication is effective in helping him with impulse control. (R. 60-61). Our Circuit has found lesser activities supportive of a finding of not disabled. *See Hartranft*, 181 F.3d at 361 (activities such as walking to bus stop, shopping, and washing dishes supports a determination of not disabled). The "[m]ere presence of a disease or impairment is not enough. A claimant must show that his disease or impairment caused functional limitations that precluded him from engaging in any substantial gainful activity." *Walker v. Barnhart*, 172 F. App'x. 423, 426 (3d Cir. 2006). Therefore, I conclude that the opinion of the ALJ is supported by substantial evidence. Plaintiff's request for remand on this basis is denied.

### B. Opinions of Hernandez, Perch and Primavera

Plaintiff contends that the ALJ erred by according great weight to the opinion of consultative examiner Joseph Primavera, Ph.D. and partial weight to the opinions of treating source Hernandez and consultative examiner Perch, without discussion of the evidence that supported her decision. (Pl.'s Br. at 13). The Commissioner asserts that the ALJ properly evaluated the competing opinion evidence and established Plaintiff's RFC in accordance with the law. I will address each medical source separately, but will quote the ALJ 's findings as to Plaintiff's mental impairments:[8]

> As to his mental impairments, [Plaintiff] was psychiatrically admitted for five days to Belmont in May 2014 on a 201 voluntary commitment after a suicide attempt by overdose of Tylenol after an argument with his wife. He was diagnosed with bipolar disorder Type II, with a Global Assessment of Functioning (GAF) score of 21-30 upon admission and 51-55 upon discharge. He was started on Depakote, stabilized, and discharged to outpatient treatment. A bio-psychosocial evaluation at Best Behavioral Healthcare was conducted in December 2014 upon complaints of depression secondary to divorce and his current living situation with his ex-wife and son. He was diagnosed with PTSD and (rule out) bipolar disorder. His GAF was 60, correlating with an assessment of symptoms as on the cusp between mild and moderate. He began outpatient treatment, including therapy and medication management. Issues included his divorce and anger toward his ex-wife. His diagnosis was changed to bi-polar disorder with psychotic features (Type 1), mood disorder due to general medical illness, and mild cannabis use disorder. Prescriptions initially included Depakote, Seroquel, Klonopin, and Celexa. Noted were significant problems relating to others, anger issues, irritability, and some paranoid delusions. Mental status examination in June 2016 indicated anxious affect, depressed mood, good cognition and memory, insight and judgment fair, and thought processes goal directed. At the end of 2016, he moved out of the marital home and in with his nephew. Isolative behavior was noted. He reported that his medications were helping, however.

***

---

[8] Plaintiff also asserts that the ALJ erred in relying on Plaintiff's GAF scores. The GAF scale does not have a direct correlation to the severity requirements in the listings, and it is never dispositive in the disability determination. *Gilroy v. Astrue*, 351 F. App'x. 714, 715 (3d Cir. 2009). The ALJ noted Plaintiff's GAF scores, which showed improved functioning after treatment, but the scores were not outcome determinative. The ALJ did not err by noting Plaintiff's GAF scores, she merely considered the scores as a factor in her determination.

> [Plaintiff] has been in outpatient treatment for almost two and[one]half years. He reports that his medications help with his moods and behaviors. Mental status examinations have been generally satisfactory. His impatient hospitalization in January 2015 was proximate to the very significant external stressor of his separation and divorce. Treatment notes appeared to focus on his relationship with and anger toward his ex-wife, although significant problems in relating to others and anger issues were noted. That has been considered in setting forth the accommodations in the mental aspects of the above RFC. He is therefore limited to unskilled work due to his deficiencies in understanding, memory, concentration, persistence and pace, and further restrictions have been added due to his significant social functioning and adaptation deficiencies.

(R. 25-26).

### 1. Opinion of Dr. Primavera

Plaintiff contends that the ALJ erred by according great weight to the opinion of consultative examiner Dr. Primavera without incorporating all of Dr. Primavera's opined limitations in the RFC. (Pl. Br. at 12). The Commissioner asserts that the ALJ properly weighed the opinion of Dr. Primavera in crafting Plaintiff's RFC. (Def. Br. at 10). The ALJ addressed Dr. Primavera's opinion as follows:

> The psychological consultative examiner, Dr. Primavera, PhD, examined [Plaintiff] in April 2015. [Plaintiff] reported that he received a GED in a special education curriculum, and he had been diagnosed with ADHD. He also reported a history of bipolar disorder, and two psychiatric hospitalizations, one in 2014 after a suicide attempt, and one in 2015. Mental status examination indicated anxious and tense affect, dysthmic mood, average range of intellectual functioning, somewhat impaired memory skills, good insight and judgment. He diagnosed ADHD by history and unspecified bipolar disorder. His prognosis was guarded, and he was deemed able to manage his own funds. He completed a medical source statement of [Plaintiff's] abilities to perform work related mental activities and found him to be markedly limited in his ability to understand, remember, and carry out detailed instructions, make judgment on complex work-related decisions, interact appropriately with the public, and respond appropriately to work changes. He had moderate limitations in the ability to understand, remember, and carry out simple instructions, make judgment on simple work-related decisions, and interact appropriately with supervisors and co-workers.

(R. 25). Plaintiff asserts that Dr. Primavera found Plaintiff had marked limitations in his ability to interact with the public and respond to usual routine job stresses, but the ALJ did not

incorporate those marked limitations in her final RFC determination. The ALJ did in fact incorporate Plaintiff's marked limitations in dealing with the public in the RFC determination. (R. 21). The ALJ noted "In interacting with others, [Plaintiff] has marked limitations." (R. 20). Accordingly, the ALJ limited Plaintiff to positions with no exposure to the general public. (R. 21).

The ALJ found that Plaintiff had moderate limitations in adapting and managing himself. *Id*. In support, the ALJ cited to Plaintiff's ability to care for himself and others, and to manage household responsibilities and finances. *Id*. The ALJ also noted that Plaintiff would likely have difficulties adjusting to workplace changes or handling workplace pressures. Id. The ALJ's RFC assessment incorporated this limitation by restricting Plaintiff to "occupations where there are few and infrequent changes in the work setting or the tasks performed." *Id*. Plaintiff appears to argue that Dr. Primavera's opined marked limitation in his ability to respond appropriately to work changes is inconsistent with the ALJ's finding that Plaintiff has moderate limitations in adaptation. To the extent Plaintiff argues that an opinion offered by a source accorded great weight by the ALJ must be accepted by the ALJ verbatim, Plaintiff is incorrect. "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361 (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).

The ALJ found most, but not all, of the limitations opined by Dr. Primavera are supported by the treatment record. A medical opinion is simply "one piece of evidence to evaluate in formulating the RFC. . . (and) it is not necessarily controlling." *Safronsky v Berryhill*, No. 16-4002, 2019 WL 119987, at *9 (E.D. Pa. Jan. 7, 2019). I find the reasons given by the ALJ in weighing Dr. Primavera'a opinion and determining Plaintiff's RFC to be appropriate, sufficiently

explained and supported by substantial evidence of record. Therefore, remand is not warranted on this basis.

## 2. Opinion of Edgar Hernandez, MHP[9]

Plaintiff asserts that the ALJ erred by according partial weight to psychotherapist Hernandez's conclusions. (Pl. Br. at 10-11). The Commissioner counters that the ALJ properly weighed Hernandez's opinion. (Def. Br. at 11). The ALJ addressed Hernandez's opinion as follows:

> I give only partial weight to the opinion of [Plaintiff's] treating psychiatrist (name illegible). He/she found similar restrictions in understanding and memory as Dr. Primavera, but found marked limitations in the ability to interact appropriately with supervisors and co-workers and respond appropriately to work pressures, and extreme limitations in the ability to interact appropriately with the public, and respond appropriately to work changes. I specifically find the limitations in social functioning and adaptation to be inconsistent with the treatment notes and [Plaintiff's] GAF scores.

(R. 26). The ALJ did not reject Hernandez's opinion outright. Instead, she properly included credibly established mental limitations in the RFC. The ALJ found Hernandez's limitations to social functioning and adaptation to be too extreme based on his treatment notes and Plaintiff's GAF score of 60, after treatment, which puts Plaintiff's symptoms on the cusp between mild and moderate. (R. 25, 386). Further, Hernandez's comments in his Medical Source Statement are not supported by his treatment notes. For example, he stated in the Medical Source Statement that Plaintiff "screams back and curses" in therapy sessions, but this was never mentioned in any of his treatment notes. (R. 619, 811-846). On the contrary, during regular therapy sessions, Hernandez consistently described Plaintiff as exhibiting, *inter alia,* pleasant and cooperative

---

[9] It is unclear from the record if Hernandez is an acceptable medical source under 20 C.F.R. §§ 404.1513(a); 416.913(a). However, the regulations nevertheless direct the ALJ to use evidence from "other sources" including psychotherapists, to determine the severity of an impairment and how it affects Plaintiff's ability to work. *Id.* at §§ 404.1513(d); 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2.

18

behavior, logical and goal-directed thought processes, fluent speech, and intact memory. (R. 811-846). The treatment record here provides substantial support for the ALJ's conclusion that the limitations in social functioning and adaptation assessed by Hernandez are not supported by Hernandez' own contemporaneous notes and observations.

I thus find that substantial evidence supports the ALJ's decision to afford partial weight to Hernandez's opinion.

### 3. Opinion of Dr. Perch

Plaintiff appears to argue that the ALJ improperly weighed the opinion of Dr. Perch as it contradicts the more restrictive assessment provided by Hernandez.[10] (Pl. Br. at 13). The Commissioner asserts that the ALJ provided legitimate reasons for the weight she accorded Perch's opinion. (Def. Br. at 11). The ALJ addressed Dr. Perch's opinion as follows:

> The state DDS mental RFC assessor, Dr. Perch, Ed.D., reviewed the medical file in May 2015 and also found [Plaintiff] to have marked limitations in his ability to understand, remember, and carry out detailed instructions, but moderate limitations in social functioning and adaptation. I find [Plaintiff] to be somewhat more limited socially and in ability to adapt, so his opinion is only given partial weight.

(R. 26).

The ALJ generally found Plaintiff's limitations to be *greater* than those imposed by Dr. Perch, and therefore gave Dr. Perch's opinion only partial weight. Specifically, Dr. Perch opined that Plaintiff had no significant limitations in his ability to understand, remember and carry out simple instructions, make judgments on simple work-related decisions, and interact appropriately with the public and co-workers; and moderate limitations in his ability to respond appropriately

---

[10] Plaintiff's argument concerning the ALJ's treatment of Dr. Perch's opinion is underdeveloped. Giving Plaintiff every benefit of the doubt, we presume this is the argument Plaintiff wished to advance. Plaintiff asserts that Dr. Perch's opined limitations were greater than those adopted by the ALJ in her RFC determination, (Pl. Br. at 13). This is incorrect.

19

to changes in a routine work setting; interact appropriately with supervisors; and in dealing with changes in a routine work setting. (R. 82).

The ALJ imposed greater limitations than Dr. Perch, finding Plaintiff to have marked limitations in interacting with others, and moderate limitations in adapting and managing himself; moderate limitations in concentration, persistence or pace; and moderate limitations in understanding, remembering or applying information. (R. 20). This conclusion is supported by the Plaintiff's overall treatment record and medical evidence. Thus, the ALJ did not err by including mental limitations in the RFC that go beyond the opinion of the state psychologists, but not as far as recommended by Plaintiff's treating therapist. *See Chandler*, 667 F.3d at 361 ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, [the regulations] require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s). . . ").

Consequently, I find that the ALJ properly weighed the medical opinion evidence related to Plaintiff's mental limitations, and conclude that remand on this basis is not warranted.

## VI.    CONCLUSION

For the reasons set forth above, I find that the ALJ's findings are supported by substantial evidence. Accordingly, Plaintiff's request for review is **DENIED**. An appropriate Order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE